CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/31/2022
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| PAUL B.[1], *Plaintiff,* <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, *Defendant.* | CASE NO. 6:20-cv-00078 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff Paul B. objects to the Magistrate Judge's Report and Recommendation ("R&R") upholding the Social Security Administration's denial of his application for disability insurance benefits. Plaintiff argues that the administrative law judge ("ALJ") erred in discrediting the medical opinion of his treating physician, failing to conduct a function-by-function analysis, and discrediting his testimony regarding his subjective experience of pain and fatigue.

Considering the R&R, Plaintiff's objections, and the Commissioner's response, Dkts. 18, 19, 20, and the administrative record, Dkt. 9, the Court agrees that the ALJ erred. Accordingly, the Court will grant summary judgment to Plaintiff and order remand.

**I**

On August 22, 2017, Plaintiff filed Title II and Title XVI applications alleging disability beginning December 1, 2012. Dkt. 9-1 p. 10. Plaintiff received a video hearing on his claims before an ALJ on February 13, 2020. *Id.*

---

[1] Due to privacy concerns, the Court uses only the first name and last initial of the claimant in social security opinions.

After considering the evidence, the ALJ found that Plaintiff retains the residual functional capacity ("RFC")[2] to perform light work[3], with the further limitations[4] that he can lift and/or carry 20 pounds occasionally and 10 pounds frequently;[5] sit, stand or walk for six hours in an eight-hour workday; occasionally[6] climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; have occasional exposure to wetness, extreme temperatures, vibrations, unprotected heights, and moving mechanical parts; frequently reach above his shoulder with the bilateral upper extremities; frequently perform handling/gross manipulation and fingering/fine manipulation with the bilateral upper extremities; and frequently operate foot controls with the bilateral lower extremities. *Id*. at 16. Although this RFC would not allow Plaintiff to perform any of his past relevant work, the ALJ found that given

---

[2] A claimant's residual functional capacity is "'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)).

[3] The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

[4] Pursuant to Social Security Ruling ("SSR") 96-8, *see infra* n.9, an ALJ's RFC assessment must include evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b). These are: "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching), [that] may reduce [a claimant's] ability to do past work and other work."

[5] SSR 83-10, *see infra* n.9, defines "frequent" as "occurring from one-third to two-thirds of the time."

[6] SSR 83-10, *see infra* n.9, defines "occasional" as "occurring from very little up to on-third of the time."

Plaintiff's age, education, work experience, and RFC there are a sufficiently significant number of jobs in the national economy that Plaintiff can perform. *Id*. at 22. Accordingly, the ALJ concluded that Plaintiff had not been under disability within the meaning of the Social Security Act. *Id*. at 11.

While the ALJ did not provide an independent explanation for most of the limitations incorporated into his RFC finding, he briefly addressed the conflict between his determination and Plaintiff's subjective testimony regarding the severity of his symptoms. The ALJ stated that while he thought "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 17. Specifically, the ALJ thought Plaintiff's "allegations of debilitating pain [were] inconsistent with imaging, physical examination findings, and routine conservative care since the alleged onset date." *Id*.

With respect to physical examinations, the ALJ noted that "although examinations at times reveal tenderness and a limited range of motion in the back and neck, slightly diminished reflexes, and positive straight leg raising, they are otherwise normal despite complaints" and that "[r]ecent x-ray findings of the claimant's hands revealed only mild findings." *Id*. at 20. With respect to conservative treatment, the ALJ noted that "claimant's shoulder pain was treated non-operatively with cortisone injections, therapy, and NSAIDS" and that "the record also reveals a large gap in treatment, which is inconsistent with his allegations of significant pain." *Id*. Finally, the ALJ considered "indication in the medical records that the claimant may have been doing odd jobs or self-employed as a construction worker during the period at issue, which suggests his impairments are not as limiting as he claims." *Id*.

The ALJ also briefly addressed the medical opinions of three doctors. He found "generally persuasive" the opinions of state agency reviewing physicians Wyatt S. Beazley and David Bristow, who determined in January 2018 and October 2017, respectively, that Plaintiff could stand, walk and sit for about six hours in an eight-hour day; lift and carry 20 pounds occasionally and 10 pounds frequently; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. *Id*. at 20–21. Dr. Beazley also thought that Plaintiff "should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards." *Id*. at 21.

The ALJ noted that preventing Plaintiff from performing medium or heavy work[7] is consistent with Plaintiff's diagnosis "with degenerative disc disease of the cervical and lumbar spine along with the OA of the shoulder and hip and neuropathy of the hands" as well as physical examination findings that Plaintiff had "tenderness and a limited range of motion in his neck and back and positive straight leg raising." *Id*. at 20–21. However, the ALJ also found that the "limited range of motion, tenderness, and positive impingement signs" found in "physical examination findings of the claimant's shoulder" as well as "imaging reflecting minor degenerative of the hands" supported a limitation of only frequent manipulation with the bilateral upper extremities. *Id*.

In contrast, the ALJ found only "partially persuasive" the opinion of Dr. Semeen Gahni, who determined in January 2020 that Plaintiff was limited to "performing lifting and carrying of

---

[7] The regulations define medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). The regulations define heavy work as involving "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

light exertion;" less than 2 hours of sitting, standing, or walking in an eight-hour workday "along with the need to periodically alternate sitting and standing to relieve pain;" "occasional climbing, crawling and stooping, but never kneeling and crouching;" "constant reaching in all directions and handling;" and the need to be "absent from work more than 3 times per month." *Id*. The ALJ stated that "the limitations of sitting, standing, or walking of less than two hours each in an eight-hour workday are extreme and inconsistent with the physical examination findings of unassisted gait, able to heel and toe walk, and normal strength and reflexes." *Id*.

Plaintiff filed a complaint seeking judicial review of the decision against him on December 13, 2020. Dkt. 2. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. The parties have filed cross motions for summary judgment, Dkts. 13, 15, and the Magistrate Judge issued an R&R recommending that the Court deny Plaintiff's motion for summary judgment and grant the Acting Commissioner's, Dkt. 18. Plaintiff filed his objections to the Magistrate Judge's decision shortly thereafter. *See* Dkt. 19.

## II

The Court conducts a de novo review of those portions of the R&R to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

When examining a Social Security Administration disability determination, the reviewing court must uphold factual findings of the ALJ if they are supported by substantial evidence and were reached under application of the correct legal standard. *See* 42 U.S.C. §§ 405(g),

1383(c)(3); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is more than a mere scintilla—but less than a preponderance—of the evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig*, 76 F.3d at 589). Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled" the Court must defer to the ALJ's decision. *Id* (quoting *Craig*, 76 F.3d at 589). Moreover, the reviewing court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig*, 76 F.3d at 589. "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### III

**A. The ALJ erred in his explanation for discrediting Dr. Ghani's opinion**

Plaintiff first challenges the ALJ's decision to partially discredit Dr. Ghani's medical opinion. Dkt. 19 p. 1–3.

20 C.F.R. § 404.1520c(a) provides that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[8] The regulations instead require ALJs to evaluate and explain the persuasiveness of proffered medical

---

[8] 20 C.F.R. 404.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

opinions explicitly in terms of their supportability and consistency. § 404.1520c(b)(2) (providing that the ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions" but, excepting circumstances not implicated here, is not required to explain how he considered other factors). Supportability has to do with a medical expert's own justification for his or her opinion. *See* § 404.1520c(c)(1) (providing that the supportability factor concerns the existence of "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)") While the consistency factor looks to the consistency of the expert's opinion with other evidence in the record. *See* § 404.1520c(c)(2). (providing that the consistency factor concerns the consistency of the medical opinion(s) with "evidence from other medical sources and nonmedical sources in the claim").

Moreover, the ALJ is permitted, "as appropriate," to pass judgment on the persuasiveness of a medical opinion as a whole—he or she need not address each and every medical conclusion contained in a physician's multi-part finding. § 404.1520c(b)(1). The regulations explain that "it is not administratively feasible" for ALJs to "articulate in each determination or decision how [they] considered all of the factors for all of the medical opinions" in a case record. *Id*. As such, the regulations allow for a general assessment. *See id*. (providing that "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis.").

Here, the ALJ found that Dr. Ghani's proposed "limitations of sitting, standing, or walking of less than two hours each in an eight-hour workday are extreme and *inconsistent with the physical examination findings* of unassisted gait, able to heel and toe walk, and normal strength and reflexes." Dkt. 9-1 at 21 (emphasis added). The Court understands this to mean that

the ALJ did not believe Dr. Ghani's findings to be consistent with the cited "objective medical evidence" and "evidence from other medical sources." § 404.1520c(c)(2). The ALJ appears to have entirely overlooked the supportability analysis—he does not address Dr. Ghani's supporting evidence and explanations at all. *See* Dkt. 9-1 p. 589. And his perfunctory consistency analysis cannot satisfy the regulation's call for explicit consideration of relevant record evidence because it leaves the Court to reverse-engineer his reasoning. While it was not necessary for the ALJ to meticulously juxtapose each of Dr. Ghani's opinions with each piece of medical evidence in the record, the regulations do require ALJs to articulate how relevant evidence, especially relevant countervailing evidence, weighed in his decision. *Cf.* § 404.1520c(b)(2) ("Therefore, we will *explain* how we considered the supportability and consistency of factors for a medical source's medical opinions.") (emphasis added). A contrary rule would leave reviewing courts with no way to trace the path of the ALJs reasoning, rendering meaningful review impossible.

      Consider Plaintiff's pending argument that the ALJ appears to have ignored evidence in discrediting Dr. Ghani's medical opinion. Plaintiff contends that the ALJ's decision is *in*consistent with a November 2019 physical examination finding that Plaintiff had a shuffling gait and was able to heel/toe walk only with difficulty; evidence from an August 2017 examination that he had 1+ reflexes in the knees and .5+ reflexes in the ankles; evidence from 2013, 2016, and 2017 of positive straight leg raising; and an MRI of the lumbar spine showing compression of the right L4 nerve root. Dkt. 14 p. 17. Perhaps the ALJ ignored this evidence and perhaps he did not. It is impossible to tell because he did not address it. The conclusion that Plaintiff retains the ability to walk for six hours in an eight-hour workday, for instance, is at the very least peculiar in light of recent evidence that plaintiff could only heel/toe walk with difficult and had a shuffling gait. This peculiarity requires explanation. Did the ALJ find the November

2019 note unpersuasive given other evidence in the record? If so, what evidence did he rely on to discount the 2019 note? If not, why does Plaintiff's difficulty not require a more limited RFC?

The regulations require ALJs to "explain" the significance of relevant evidence to their evaluation of the persuasiveness of a medical opinion. § 404.1520c(b)(2). On remand, the ALJ must analyze the consistency and supportability of medical opinions by evaluating the relevant medical evidence, including countervailing evidence; and by connecting that evidence to his ultimate conclusion.

By contrast, the ALJ was not required to independently address his rejection of Dr. Ghani's opinion concerning absences because there was no relevant countervailing evidence to address—at least none that Plaintiff has brought to the Court's attention. The regulations explicitly excuse ALJs from separately evaluating each portion of a medical opinion. In this instance, failure to address Dr. Ghani's opinion regarding absences was "appropriate" because it did not leave the Court to wonder whether important countervailing evidence was ignored or otherwise discredited without good cause. *See* § 404.1520c(b)(1) (explaining that source-level articulation will be conducted "as appropriate").

### B. The ALJ failed to conduct the required function-by-function analysis

Plaintiff next argues that the ALJ erred in assessing his residual functional capacity because he did not conduct the required function-by-function analysis. Dkt. 19 p. 3. The Court agrees. The ALJ erred both by beginning with his conclusion and by failing to engage in an independent narrative discussion for each functional limitation making up the RFC.

"'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 388

(4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)) (alteration original). In *Dowling*, the Fourth Circuit found error where the ALJ began with the third step, "noting at the outset" his RFC finding and only then proceeding to "identify evidence and attempt to explain how that evidence logically supported his predetermined conclusion." *Id*. The alternate, correct procedure is mandated by Social Security Ruling 96-8p.[9] Expounding the purpose behind the regulation, the Fourth Circuit has explained that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (internal quotation marks and alterations omitted).

Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it." *Dowling*, 986 F.3d at 387 (cleaned up). That is, each functional limitation (or lack thereof) ultimately incorporated into an ALJ's RFC finding must be justified by independent analysis demonstrating consideration of relevant evidence and logically connecting that evidence to the ALJ's determination. *See id*. at 388 (holding that ALJ's finding of no restriction in claimant's ability to sit "should have been the result of an analysis that was separate from the ALJ's appraisal of Appellant's ability to perform other functions, and should have been accompanied by 'a narrative discussion describing' the evidence and supporting it.") (quoting *Thomas*, 916 F.3d at 311). This

---

[9] Social Security Rulings ("SSRs") represent the Social Security Administration's own interpretation of the Social Security Act and are binding on the Administration, including ALJs adjudicating Social Security cases. *Dowling*, 986 F.3d at 387 n.9. SSR 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and "[o]nly after that may RFC be expressed." Fed.Reg. 34,474, 34,475 (July 2, 1996).

requirement also derives from Social Security Ruling 96-8p. *See Mascio*, 780 F.3d at 636 ("The Ruling further explains that the residual functional capacity 'assessment *must include a narrative discussion describing how the evidence supports each conclusion*, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'") (quoting Fed.Reg. 34,478) (emphasis added).

The ALJ erred in both respects. He began with his RFC finding and only then proceeded to defend that finding. *See* Dkt. 9-1 pp. 16–22. And he substituted a hurried parade of evidence, unaccompanied by independent evaluative analysis, for the function-by-function narrative discussion called for the SSR 96-8p.

The closest he comes to meeting the second requirement is in his evaluation of the three medical opinions, where he addresses his acceptance or rejection of the physicians' opinions as to some (but not all) of the limitations incorporated into his RFC finding. *See id*. at pp. 20–21. But even here the ALJ's analysis is cursory at best and cannot substitute for the function-by-function analysis SSR 96-8 calls for. Consider again his rejection of Dr. Ghani's opinion regarding the limitations of sitting, standing, or walking of less than two hours each in an eight-hour workday. Recall that the ALJ dismissed Dr. Ghani's opinion as "extreme and inconsistent with the physical examination findings of unassisted gait, able to heel and toe walk, and normal strength and reflexes." *Id*. at 21. A narrative discussion would have addressed countervailing evidence like the 2019 primary care note.

Similarly, with respect to Plaintiff's manipulative limitations, the ALJ responded to the medical opinion that Plaintiff had no manipulative limitations by stating that "physical examination findings of the claimant's shoulder revealed limited range of motion, tenderness, and positive impingement signs" as well as "imaging reflecting minor degenerative of the hands"

supported his finding that Plaintiff can only frequently reach, handle, finger, and feel with the bilateral upper extremities. *Id*. at 20–21. But he does not specify which physical examination findings he found persuasive, nor does he explain why the evidence counsels a limitation of frequent rather than occasional manipulation, etc.[10] As Plaintiff pointed out, he testified that his hands are numb 60% of the time; a March 2016 exam showed weak grip strength and positive impingement in both shoulders; an August 2017 exam documented pain and weakness in Plaintiff's right shoulder and 50% range of motion loss in the cervical spine; an April 2019 exam showed decreased range of motion and decreased grip strength bilaterally; a June 2019 right shoulder MRI showed severe tendinopathy and pressure tearing of the distal tendon; a June 2019 exam documented limited range of motion of the right shoulder and diminished grip strength; and a December 2019 exam documented decreased upper extremity strength. Dkt 14 pp. 17–18. The Court is again left to speculate how the ALJ weighed this evidence, or whether he weighed it at all.

      The ALJ stated that Dr. Ghani's opinion regarding lifting and carrying limitations was "consistent with the evidence of the record including imaging, physical examination findings, and conservative treatment." Dkt. 9-1 p. 21. This is egregiously conclusory treatment; and yet other limitation findings do not receive any independent treatment whatsoever.

      Regret for the absence of a proper function-by-function analysis becomes especially poignant where factors that should have little or no weight are included in an unweighted list. Before getting to his analysis of the medical opinions, the ALJ decided to discredit Plaintiff's own testimony about his limitations due, at least in part, to the fact that he thought Plaintiff's medical history reflected conservative treatment and evidence that Plaintiff may have done some

---

[10] *See supra*, nn.5–6.

work during his disability period despite his testimony to the contrary. *Id*. at 20. Inferring the absence of work-limiting pain from the fact that Plaintiff *might* have done *some* unspecified amount of work in the past would be inconsistent with substantial evidence. *See Arakas* 983 F.3d at 110 (holding that the ALJ "erred in finding that [Plaintiff's] part-time work in 2017 contradicted" a finding of "inability to perform work activity on a sustained basis" because "being able to help-out at her sister-in-law's restaurant for about 4 hours per week (and with significant difficulty) in no way suggests that [Plaintiff] could sustain full-time work of 40 hours a week."). Similarly, conservative treatment alone does not refute Plaintiff's claim of debilitating pain—perhaps more invasive treatment was not available. *See id*. at 102 ("[Plaintiff] cannot be faulted 'for failing to pursue non-conservative treatment options where none exist'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

As it is, the Court cannot determine whether the ALJ's limitation findings are supported by substantial evidence because he has not told us what evidence he has relied on and what he has discounted or why. Presumably this is why SSR 96-8p calls for a more scrupulous procedure.

While the Fourth Circuit has rejected a per se rule requiring remand when an ALJ fails to perform the required function-by-function analysis, here we are presented with a situation in where "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki b. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). On remand, the ALJ must independently consider each limitation, utilizing a narrative discussion that addresses relevant evidence—including relevant countervailing evidence—and logically connects that evidence to the ultimate conclusion. And the ALJ should articulate his RFC finding only after he has completed independent consideration of each limitation.

**C. The ALJ failed to justify discrediting Plaintiff's subjective testimony**

Finally, Plaintiff argues that the ALJ erred in discrediting his testimony about the severity, persistence, and limiting effects of his symptoms because he did so on the basis of an absence of objective medical evidence substantiating his statements.

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p. First, the ALJ must determine whether objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p recognizes that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them."

*Arakas*, 983 F.3d at 95 (cleaned up). This two-step process "was born out of a long history of disagreements" between the Fourth Circuit and the Social Security Administration, wherein the Court "battled the Commissioner for many years over how to evaluate a disability claimant's subjective complaints of pain." *Id*. (cleaned up). Throughout this time, the Fourth Circuit has consistently held the position that "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Id*. (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989)). "Rather, a claimant is 'entitled to rely exclusively on subjective evidence to prove the second part of the test.'" *Id*. (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)).

With respect to the first step, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Dkt. 9-1 p. 17.

But at the second step the ALJ disregarded "longstanding precedent and the agency's own policy by improperly discounting [Plaintiff's] subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating [his] statements." *Arakas*, 983 F.3d at 95–96. The ALJ reasoned:

> The undersigned finds that the symptoms and limitations alleged by the claimant are not fully supported by the objective evidence. While MRI findings reveal evidence of DDD of the lumbar spine and cervical spine, the record reveals that the claimant's treatment since the alleged onset date has been conservative. As noted above, claimant's shoulder pain was treated non-operatively with cortisone injections, therapy, and NSAIDs (Exhibit 16F). Recent x-ray findings of the claimant's hands revealed only mild findings (Exhibit 23F). The record also reveals a large gap in treatment, which is inconsistent with his allegations of significant pain. Furthermore, even when the claimant was obtaining care, the record reveals such care was conservative. Moreover, although examinations at times reveal tenderness and a limited range of motion in the back and neck, slightly diminished reflexes, and positive straight leg raising, they are otherwise normal despite his complaints.
>
> Finally, there is indication in the medical records that the claimant may have been doing odd jobs or self-employed as a construction working [sic] during the period at issue, which suggests his impairments are not as limiting as he claims.

*Id*. at 20. Plaintiff's conservative treatment and possible past work does not satisfy substantial evidence for the reasons already stated. *See supra*. III.B. And any controlling weight placed on objective medical evidence was error. *Arakas*, 983 F.3d at 97 (holding the ALJ erred by effectively requiring objective evidence by "placing undue emphasis on [Plaintiff's] normal clinical and laboratory results").

Plaintiff was entitled to rely exclusively on subjective evidence to prove the severity of his symptoms. *Arakas*, 983 F.3d at 96. Thus, the ALJ "'improperly increased [his] burden of proof' by effectively requiring [his] subjective descriptions of [his] symptoms to be supported by objective medical evidence." *Id*. (quoting *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017)).

On remand, the ALJ must not discredit Plaintiff's testimony as to his subjective experience of pain simply because it cannot be corroborated by objective medical evidence.

## IV

Accordingly, Plaintiff's motion for summary judgment will be granted, the Commissioner's decision will be reversed, and the Court will remand this matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

\*\*\*\*

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this __31st__ day of March 2022.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE